**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |  |
|---|---|---|
| NEXTPOINT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-765 (LMB/TCB) |
| | ) | |
| JOHN DOE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION**

THIS MATTER is before the undersigned on Plaintiff NextPoint, Inc.'s ("Plaintiff") Motion for Entry of Default Judgment (Dkt. 10).[1] For the reasons stated below, the undersigned U.S. Magistrate Judge recommends that the Court grant Plaintiff's motion for default judgment.

I.   BACKGROUND

**A. Procedural Posture**

Plaintiff filed this lawsuit seeking, among other things, the transfer of Defendant Domain Names agingfabulous.com; alloydigital.com; alloyeducation.com; alloymarketing.com; alloyonline.com; alloytv.com; awkwardnames.com; b5media.com; bakingdelights.com; breakmedia.com; brkmd.com; buzzerbeat.com; cheatfiles.com; chickipedia.com; defymedia.com; ebeautydaily.com; epicwtfs.com; europestring.com; forgedinbattlegame.com; funnyreceipts.com; gamingforums.com; generatela.com; gurlpages.com; hatfallgame.com; ifilmcodes.com; ifilm.com; ifilmcorp.com; ifilmcorp.net; ifilmmail.com; ifilm.net;

---

[1] The relevant filings before the undersigned include Plaintiff's Verified Complaint ("Compl.") (Dkt. 1); Plaintiff's Motion for Entry of Default Judgment ("Mot. Default J.") (Dkt. 10); Memorandum of Law in Support of Plaintiff's Motion to Entry of Default Judgment ("Mem. Supp.") (Dkt. 11); and all attachments and exhibits submitted with those filings.

ifilmnetworks.net; ifilm-pro.com; ifilmpro.com; ifilmpro.net; ifilmpublishing.com;

ifilmstaff.com; ifilmstudios.com; ifilmtelevison.com; ifilm.tv; makeupminute.com;

mustamine.com; myroughlife.com; nextpt.com; offbeathomes.com; parentfails.com;

pophangover.com; racketsandballs.com; sfuniverse.com; shutthefailup.com; simplythrifty.com;

sugarloot.com; takkle.com; thatdamnpc.com; theparistraveler.com; theworststuffever.com;

uturf.com; wallstreetfighter.com; worklols.com; worstthingieverate.com ("Defendant Domain

Names") to his possession after an unknown person transferred control of the domain names

away from Plaintiff without its authorization. (*See generally* Compl.) Plaintiff filed its Verified

Complaint on July 8, 2020 pursuant to the Anti-Cybersquatting Consumer Protection Act

("ACPA"), 15 U.S.C. § 1125(d); the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; the

Virginia Computer Crimes Act, § 18.2-152.3, Code of Virginia 1950 (as amended); and the

Electronic Communications and Privacy Act, 18 U.S.C. § 2511. (*See generally* Dkt. 1.) Plaintiff

sought relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and for claims for

Tortious Interference of Contractual Relationships, to Quiet Title, and for Conversion. *Id.* When

a representative for Defendant Domain Names failed to timely appear or otherwise respond in

this matter, Plaintiff requested the clerk's entry of default on August 6, 2020, and the Clerk

entered Defendant's default on August 10, 2020. (Dkts. 8-9.) Thereafter, Plaintiff filed the

instant motion for default judgment and the supporting memorandum on August 10, 2020. (Dkts.

10-11.) Plaintiff moves for default judgment against Defendant Domain Names solely upon its

ACPA claim. (Mot. Default J. at 4; Mem. Supp. at 1, 4.) Due to the COVID-19 pandemic, on

August 20, 2020, the undersigned entered an order stating:

> [T]o proceed as cautiously and safely as possible, <u>the Court will not hold a
> hearing on this matter</u>. Instead, the Court will allow any interested party to file an
> objection within two weeks of the date of this Order. Accordingly, <u>any objections
> to Plaintiff's motion for default judgment are to be filed with the Clerk's office by</u>

Wednesday, September 9, 2020 at 5:00 p.m. The undersigned will then issue a
Report and Recommendation concerning the default judgment without a hearing.

(Dkt. 13.)

No interested party filed a timely objection. Accordingly, the undersigned issues

this Report and Recommendation to address Plaintiff's motion for default judgment.

**B.  Jurisdiction and Venue**

Before the Court can render default judgment against an Internet domain name pursuant

to the ACPA, it must have (1) subject-matter jurisdiction, (2) *in rem* jurisdiction over the domain

name, and (3) proper venue.

*First*, the undersigned finds that this Court has federal question subject-matter

jurisdiction. Plaintiff brought this cause of action pursuant to the ACPA, a federal trademark

statute. (*See* Compl. ¶¶ 6-7.) This Court therefore has original jurisdiction under 28 U.S.C. §

1331 (jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the

United States"), 15 U.S.C. § 1121(a) (jurisdiction over federal trademark actions), and 28 U.S.C.

§ 1338(a) (jurisdiction over "any Act of Congress relating to . . . trademarks").

*Second*, the undersigned finds that the Court has proper *in rem* jurisdiction over

Defendant Domain Names pursuant to 15 U.S.C. § 1125(d)(2)(A). This subsection allows a

plaintiff to file an *in rem* civil action against an Internet domain name if the plaintiff is unable to

(1) "obtain *in personam* jurisdiction over a person who would have been a defendant in a civil

action"; or (2) find the person who would have been the defendant through due diligence. 15

U.S.C. § 1125(d)(2)(A)(ii)(I)-(II). Here, Plaintiff alleges that it was unable to obtain *in personam*

jurisdiction over the individual who would have been the defendant in this civil action, as it

believes Defendant "is using a fictitious name, address and email address to conceal his

identity." (Compl. ¶¶ 4, 32.) Despite Plaintiff's due diligence—including sending notice of the

3

alleged violation and its intent to proceed *in rem*, as well as publishing notice of this action as directed by the Court—Plaintiff was still unable to identify the individual. (Dkts. 3-7.) Therefore, this Court has proper *in rem* jurisdiction over Defendant Domain Names pursuant to the ACPA.

**Third**, Plaintiff filed this lawsuit in the proper venue. Under 15 U.S.C. § 1125(d)(2)(C)(i), the domain name's "situs" is in the judicial district where "the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located." 15 U.S.C. § 1125(d)(2)(C)(i). Here, venue is proper because (1) the registry operator for .COM domain names, VeriSign, Inc., is located within the Eastern District of Virginia; and (2) Defendant Domain Names are ".COM" domain names. (Compl. ¶¶ 5, 8.) Additionally, venue is proper under 28 U.S.C. § 1391(b)(2) because the subjects of this action reside in this district. (*Id.*)

## C. Service of Process

Before the Court can render default judgment, it must be satisfied that the defaulting party has been properly served. Federal Rule of Civil Procedure 4(n)(1) allows a federal court to assert jurisdiction over property if a federal statute authorizes it. Fed. R. Civ. P. 4(n)(1). The Rule further provides that the defendant must be given notice of the lawsuit "as provided in the [federal] statute or by serving a summons under [Rule 4]." *Id.* Under the ACPA, a plaintiff filing an *in rem* action must serve the registrant of the allegedly infringing domain name. 15 U.S.C. § 1125(d)(2)(A)-(B). If a plaintiff is unable to find or obtain *in personam* jurisdiction over the person who would have been the defendant, then the plaintiff can effect service of process by (1) sending notice of the alleged violation and intent to proceed *in rem* to the registrant of the domain name at the postal or e-mail address provided to the registrar; and (2) publishing notice as directed by the court. *Id.* § 1125(D)(2)(A)(ii)(aa)-(bb).

Here, Plaintiff has demonstrated proper service of process under the ACPA. On July 9, 2020, Plaintiff filed a Motion for Leave to Serve Process by Email and Publication and a supporting memorandum. (Dkts. 3-4.) In that motion, Plaintiff demonstrated its compliance with the first requirement under the statute. Specifically, Plaintiff's counsel sent a copy of the Verified Complaint, Motion for Leave to Serve Process by Email and Publication, Memorandum of Law in Support of the Motion, and Notice of Waiver of Hearing to the current registrants of Defendant Domain Names using the email and postal addresses on file with the registrar of the domain names, notifying the registrant of this lawsuit and its intent to proceed *in rem*. (Dkt. 4-1.)

On July 10, 2020, the Court granted Plaintiff's motion and ordered Plaintiff to publish the Order providing notice of this lawsuit to the registrant of Defendant Domain Names in *The Washington Times* once within fourteen (14) days of the Order. (Dkt. 6.) On July 21, 2020, Plaintiff's counsel, Mr. Jonathan Westreich, filed a notice and supporting documentation pursuant to the Court's July 10 Order. (Dkt. 7.) Mr. Westreich's declaration demonstrates that Plaintiff complied by publishing the Order in *The Washington Times* on July 15, 2020. (Dkt. 7-1.)

The undersigned finds that Plaintiff fulfilled the steps under the ACPA and this Court's Order to properly effect service of process.

## II.   FINDINGS OF FACT

Upon a full review of the pleadings and record in the case, the undersigned finds that Plaintiff has established the following facts.

### A. Plaintiff's Acquisition and Use of Defendant Domain Names

Plaintiff is a Delaware Corporation with its principal place of business in Beverly Hills, California. (Compl. ¶ 3.) Plaintiff is in the business of using domain names to create

entertainment channels for its customers. (Compl. ¶ 17.) Plaintiff acquired the domain names at issue and maintained their registration. (Compl. ¶ 15, Exhibit 1, 2, and 3.) Until Defendant Doe's theft of Defendant Domain Names, Plaintiff had full administrative access to each domain name, used each domain name in commerce, and had common-law rights in the names. (Compl. ¶¶ 15, 23.) Josh Elcik, NextPoint and Defy Media's technical staff member, controlled the domain names for Plaintiff through his email addresses jelcik@defymedia.com and jelcik@hotmail.com.[2] (Compl. ¶ 16.)

As a result of Plaintiff's maintenance of Defendant Domain Names in commerce, Consumers recognized the domain names as a means of accessing certain entertainment channels. (Compl. ¶ 18.) Plaintiff alleges that Defendant Domain Names have developed substantial goodwill overtime through Plaintiff's efforts. (*Id.*) For instance, Plaintiff used Defendant Domain Names to build online audiences of over 10,000,000 per month, in addition to 40 million users across a variety of social channels. (Compl. ¶ 19.) Plaintiff alleged that it earned over $4 million from its use of Defendant Domain Names in 2016, and would have continued to profit from their use had Defendant Doe not stolen them. (Compl. ¶ 20.) Defendant Domain Names generate significant web traffic and income, and are accordingly worth approximately $3,690,765. (Compl. ¶¶ 21, 22.)

**B.  Theft and Unlawful Registration and Use of Defendant Domain Names**

Defendant Doe seized control of Defendant Domain Names through unknown means and remains in control of them. (Compl. ¶ 27, Exhibit 3.) Defendant Doe stole Defendant Domain Names with the intent to sell the domain names and make a profit. (Compl. ¶ 29.) Plaintiff alleges that Defendant Doe stole Defendant Domain Names "with the intent to divert the

---

[2] Plaintiff formed and became party to Defy Media via merger in 2013. Defy Media held some of the domain names at issue.

substantial advertising revenue produced by the web sites to which traffic is directed by the web sites associated with Defendant Domain Names to himself." (Compl. ¶ 30.)

Plaintiff did not authorize Defendant Doe to use Defendant Domain Names in this way, or in any way at all. (Compl. ¶ 31.) Defendant Doe also provided misleading or incomplete contact information in the domain name registration when he changed the Registration for Defendant Domain Names. (Compl. ¶¶ 4, 32.) In fact, the address Defendant Doe provided upon registration does not even exist. (Compl. ¶ 4.) Plaintiff alleges that Defendant Doe's actions constitute "registration, trafficking, or use of a domain name that is identical to Plaintiff's trademarks, with bad faith to profit therefrom" under the ACPA. (Compl. ¶ 37.)

### III.   EVALUATION OF PLAINTIFF'S COMPLAINT

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, the defaulting party is not deemed to admit conclusions of law or "allegations regarding liability that are not well-pleaded." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011) (internal quotation marks and citations omitted)). Consequently, before entering default judgment, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim upon which relief can be granted. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) (citations omitted).

Here, as discussed more below, Plaintiff only seeks the transfer of Defendant Domain Names under the ACPA (Count I). And, "pursuant to the remedies available for an *in rem* action brought pursuant to the ACPA," Plaintiff requests that this Court dismiss the remaining claims

(Counts II-VIII) without prejudice. (Mem. Supp. at 4.) Accordingly, the undersigned will only address the ACPA claim (Count I).

### A. Legal Standard

Generally, the ACPA provides for a party to be liable to a trademark owner if that party has a bad-faith intent to profit from the owner's mark and registers, traffics in, or uses a domain name that is identical, confusingly similar to, or dilutive of that mark. 15 U.S.C. § 1125(d)(1)(A); *see also Cent. Source LLC v. annualcreditreport.com*, No. 1:14-cv-304, 2014 WL 3811162, at *6 (E.D. Va. Aug. 1, 2014) (citing *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001)). Accordingly, the ACPA allows the owner of a mark to bring an *in rem* proceeding against a domain name if it violates the owner's trademark rights and if the owner satisfies the various procedural provisions discussed above. *See* 15 U.S.C. § 1125(d)(2)(A). In an *in rem* action, the remedies are limited to forfeiture, cancellation, or transfer of the infringing domain name to the owner of the mark. *Id.* § 1125(d)(2)(D).

To be entitled to relief, the plaintiff must prove a violation of "any right of the owner of a mark," which encompasses rights against cybersquatting. *Id.* § 1125(d)(2)(A); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 228, 232 (4th Cir. 2002). The owner of a mark may therefore be entitled to *in rem* relief upon proving a violation of § 1125(d)(1), which creates civil liability for registering, trafficking in, or using a domain name that is "identical or confusingly similar" to a plaintiff's famous and/or distinctive mark, with a bad-faith intent to profit from that mark. 15 U.S.C. § 1125(d)(1)(A). In sum, to establish such an ACPA violation, a plaintiff must establish: (1) its ownership of a valid and protectable mark; (2) the registrant's use of a domain name that is "identical or confusingly similar" to the plaintiff's mark; and (3) the registrant's bad-faith intent to profit from the mark. *See id.*

### 1. **Plaintiff Possesses a Valid and Protectable Mark**

Plaintiff must first demonstrate that it has protectable rights in its marks. At common law, trademark ownership can be acquired "by actual use of the mark in a given market." *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 267 (4th Cir. 2003). Furthermore, the use of the mark on a website or in a domain name may be sufficient to create common-law trademark rights if it "is used to identify the sources of goods and services." *See, e.g.*, *Tober v. APROV.COM*, No. 1:07cv1252 (LMB/TCB), 2008 WL 4364221, at *2 (E.D. Va. Sept. 23, 2008) (citation omitted). As such, a plaintiff can establish common-law trademark rights by continuously using a domain name for promoting a business in commerce. *See, e.g.*, *Chen v. Jun*, No. 1:18-cv-00794 (TSE/TCB), 2018 WL 6060471, at *3 (E.D. Va. Oct. 31, 2018). Further, a plaintiff's mark must be distinctive and famous at the time of the defendant domain name's registration. 15 U.S.C. § 1125(d)(1)(A)(ii).

Here, Plaintiff pled that it owned and used Defendant Domain Names to create entertainment channels since its acquisition and until their theft. (Mem. Supp. at 3.) Plaintiff's use of Defendant Domain Names in commerce led to name recognition among consumers as a means of accessing certain entertainment channels. (*Id.*) Accordingly, Defendant Domain Names developed substantial goodwill during Plaintiff's years of use, and Plaintiff's use entitles it to common-law trademark rights in Defendant Domain Names. (*Id.*) Further, Plaintiff has pled that Defendant Doe stole Defendant Domain Names after Plaintiff had been using them in commerce for years. Defendant Domain Names were, therefore, already distinctive when Defendant Doe transferred control of the domain names away from Plaintiff. For these reasons, the undersigned finds that Plaintiff possesses a valid and protectable mark.

**2. Defendant Domain Names are Confusingly Similar to Plaintiff's Mark**

Under the ACPA, Plaintiff must show that Defendant Domain Names are either identical, confusingly similar to, or dilutive of a distinctive mark owned by Plaintiff. 15 U.S.C. § 1125(d)(1)(A); *see Doughney*, 263 F.3d at 367. If Defendant Domain Names and Plaintiff's marks are virtually identical, then they are "confusingly similar" under the ACPA. *See Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 664 (E.D. Va. 2006); *see also Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 936 (4th Cir. 1995) ("[I]n evaluating the similarity of two marks … the marks need only be sufficiently similar in appearance." (citation omitted)). Logically, this "confusingly similar" standard is satisfied when a domain name is identical to a plaintiff's mark. *See Agri-Supply*, 457 F. Supp. 2d at 663. Here, this standard is easily met. Defendant Doe transferred control of Defendant Domain Names away from Plaintiff without its authorization. (Compl. ¶ 31.) Therefore, Defendant Domain Names are identical to Plaintiff's marks and satisfy the ACPA standard as outlined above. (*See id.*)

**3. Defendant's Bad Faith**

Lastly, the undersigned finds that Defendant Doe acted in bad faith. Relevant factors for this determination include: (1) a defendant's intellectual property rights in the domain name; (2) the extent to which the name consists of the defendant's legal name; (3) a defendant's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; and (4) a defendant's provision of misleading or false contact information when applying for registration of the domain name. 15 U.S.C. §§ 1125(d)(1)(B)(i)(I)-(II), (IV), (VII). Courts may use these factors as a guide but are not required to exhaustively consider them. *Lamparello v. Falwell*, 420 F.3d 309, 319-20 (4th Cir. 2005).

Here, there are several indications of bad faith. As an initial matter, the undersigned finds

10

that Defendant Doe stole Defendant Domain Names from Plaintiff. Therefore, Defendant Doe lacked any legitimate interest in the domain names at issue and used the goodwill Plaintiff built to collect profits for himself. This supports a finding of bad faith. *See, e.g.*, *Diginus BV v. 1001.com*, No. 1:19-cv-1089 (LO/JFA) (ECF No. 14) (E.D. Va. Nov. 18, 2019). An analysis of the factors under the ACPA also support a finding of bad faith. First, Defendant Domain Names do not reflect the registrant's intellectual property rights. (Compl. ¶¶ 23, 33; *see also* 15 U.S.C. § 1125(d)(1)(B)(i)(I).) Defendant Domain Names do not reflect Defendant Doe's legal name, or any other name used to identify the registrant. (Compl. ¶¶ 32, 41; *see also* 15 U.S.C. § 1125(d)(1)(B)(II).) Third, Defendant Doe has never engaged in any bona fide noncommercial or fair use of the mark in a site accessible under any of Defendant Domain Names. (Compl. ¶¶ 28, 29; *see also* 15 U.S.C. § 1125(d)(1)(B)(i)(IV).) Rather, Defendant Doe stole Plaintiff's domain names to divert to himself revenue that Plaintiff and its clients would have otherwise received. (Compl. ¶ 29.) Finally, Defendant Doe registered Defendant Domain Names using misleading or incomplete contact information. (Compl. ¶¶ 4, 32.) Upon review of the relevant factors and underlying facts, the undersigned concludes that the registrant of Defendant Domain Names acted in bad faith.

**B. Conclusion**

Plaintiff has satisfied the ACPA's procedural provisions and is entitled to relief under 15 U.S.C. § 1125(d). As a result, the undersigned finds that the Court may order the forfeiture or cancellation of Defendant Domain Names, or transfer ownership of Defendant Domain Names to Plaintiff. *See* 15 U.S.C. § 1125(d)(1)(C), (2)(D)(i).

IV.   REQUESTED RELIEF

Plaintiff requests that the Court (1) enter default judgment against Defendant Domain

Names on Count I of Plaintiff's Verified Complaint; (2) direct VeriSign, Inc. to promptly change the registrar for Defendant Domain Names and place them in Plaintiff's account as directed by Plaintiff's counsel; and (3) dismiss the remaining counts (Counts II-VIII) without prejudice. The undersigned will consider each form of relief in turn.

### A. Entering Default Judgment on Count I

The undersigned found above that Plaintiff pled a claim upon which relief can be granted under the ACPA (Count I). As a result, the undersigned recommends granting Plaintiff's motion for default judgment, thereby entering default judgment in favor of Plaintiff and against Defendant Domain Names on Count I of Plaintiff's Verified Complaint.

### B. Change of Registrar for Defendant Domain Names and Transfer to Plaintiff

As a remedy in *in rem* proceedings against a domain name, a court may order the transfer of the domain name to the owner of the mark. 15 U.S.C. § 1125(d)(1)(C), (2)(D)(i). Here, the domain name registry for Defendant Domain Names is maintained by VeriSign, Inc., which is located in this Court's judicial district. (Compl. ¶ 5.) As such, upon entry of default judgment against Defendant Domain Names on Count I, the Court may order the registry to transfer ownership of Defendant Domain Names to Plaintiff. Because Plaintiff has pled a claim upon which relief can be granted under the ACPA and satisfied the procedural and jurisdictional requirements, the undersigned recommends that the Court transfer ownership of Defendant Domain Names to Plaintiff upon entering default judgment.

### C. Dismissing Remaining Counts (Counts II-VIII) Without Prejudice

As Plaintiff is seeking default judgment under the ACPA claim (Count I) only, Plaintiff seeks dismissal of its remaining counts (Counts II-VIII) without prejudice. Because the undersigned recommends entering default judgment under Count I, the undersigned also finds

good cause to dismiss Counts II-VIII without prejudice.

## V.    RECOMMENDATION

For the reasons stated above, the undersigned recommends that this Court (1) grant Plaintiff's motion for default judgment (Dkt. 10), thereby entering default judgment against Defendant Domain Names and in favor of Plaintiff on Count I of Plaintiff's Verified Complaint; (2) direct Verisign, Inc. to change the registrar for Defendant Domain Names and transfer them to Plaintiff's account as directed by Plaintiff's counsel; and (3) dismiss counts II-VIII of Plaintiff's Verified Complaint without prejudice.

## VI.    NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

/s/

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

September 11, 2020
Alexandria, Virginia

13